## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE UNITED STATES OF AMERICA ex
rel. DEBORAH MAGUIRE, THE STATE
OF CALIFORNIA ex rel. DEBORAH
MAGUIRE, THE STATE OF DELAWARE
ex rel. DEBORAH MAGUIRE, THE
DISTRICT OF COLUMBIA ex rel.
DEBORAH MAGUIRE, THE STATE OF
FLORIDA ex rel. DEBORAH MAGUIRE,
THE STATE OF HAWAII ex rel.
DEBORAH MAGUIRE, THE STATE OF
ILLINOIS ex rel. DEBORAH MAGUIRE,
THE STATE OF LOUISIANA ex rel.
DEBORAH MAGUIRE, THE
COMMONWEALTH OF
MASSACHUSETTS ex rel. DEBORAH
MAGUIRE, THE STATE OF NEVADA ex
rel. DEBORAH MAGUIRE, THE STATE
OF NEW MEXICO ex rel. DEBORAH
MAGUIRE, THE STATE OF NEW
HAMPSHIRE ex rel. DEBORAH
MAGUIRE, THE STATE OF TENNESSEE
ex rel. DEBORAH MAGUIRE, THE STATE
OF TEXAS ex rel. DEBORAH MAGUIRE,
and THE COMMONWEALTH OF
VIRGINIA ex rel. DEBORAH MAGUIRE,

- and -

DEBORAH MAGUIRE
c/o Christopher B. Mead, Esquire
London & Mead
1225 19th St., N.W., Suite 320
Washington, D.C. 20036

Plaintiffs

v.

OMNICARE, INC.
1600 RiverCenter II
100 East RiverCenter Blvd.
Covington, KY 41011
Defendant.

**FIRST AMENDED COMPLAINT**

**FILED *IN CAMERA* AND UNDER SEAL**

**CIVIL ACTION NO.** 02 11436 RGS

**JURY TRIAL DEMANDED**

DEBORAH MAGUIRE Plaintiff in the above-styled action, by and through her counsel of record, states that this is an action brought on behalf of the United States of America by DEBORAH MAGUIRE (hereinafter referred to as "Relator") against Omni Care Inc. (the "Defendant") pursuant to the *Qui Tam* provisions of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-33 ("Federal FCA" or "FCA"), and on behalf of the above named states under their respective State False Claims Acts listed below ("State FCAs") (together referred to herein as "*Qui Tam* Action"). Pursuant to 31 U.S.C. § 3730 (b)(2), and comparable provisions in State FCAs, this action is brought in camera and under seal.

This lawsuit is based on a scheme by the Defendant and its subsidiaries to violate the Anti-Kickback Act, 42 U.S.C. § 1320A-7b(b)(2), by offering the services of pharmacy consultants at below market rates to nursing homes, skilled nursing facilities, and other long term care facilities ("LTCFs"). The offers of these pharmacy consultant services at below market rates induce LTCFS to enter into contracts allowing Omnicare, Inc. and its subsidiaries (collectively "Omnicare") to provide drug products to patients of those LTCFs, and to bill Medicaid and other payers for those drugs. Omnicare's pharmacy consultants review all medications taken by LTCF patients and recommend different medications that result in greater profits to Omnicare, and, upon information and belief, also result in higher bills to Medicaid in many instances. Upon information and belief, Omnicare also followed a practice of falsely and fraudulently billing for more expensive, name brand drugs when it had actually provided generic versions of those drugs. Plaintiff Deborah Maguire alleges as follows:

## Jurisdiction and Venue

1.      This is a civil action by Plaintiff Deborah Maguire, acting on behalf of and in the

name of the United States and in the name of the above-listed states, against Defendant

Omnicare, Inc. under the False Claims Act, 31 U.S.C. 3729-33 (1988). This Court has

jurisdiction over this lawsuit pursuant to 28 U.S.C. 1345 and 31 U.S.C. 3732(a) and has pendent

jurisdiction over the State FCA claims pursuant to 28 U.S.C. § 1367.

2.      Omnicare has offices and a distribution center in Peabody, Massachusetts.

Omnicare causes its wholly-owned subsidiary in Massachusetts, Omnicare Pharmacy of

Massachusetts LLC, to follow Omnicare's corporate policies. Omnicare thus transacts business

in the State of Massachusetts. Venue in this District is proper pursuant to 28 U.S.C. 1391(c) and

31 U.S.C. 3732(a).

## Parties

3.      Plaintiff Deborah Maguire started working for Omnicare, Inc. in October of 2000.

She was hired to market and manage home hemodialysis programs offered by Omnicare to long-

term care facilities ("LTCFs")

4.      Defendant Omnicare, Inc., is a Delaware corporation with its headquarters at 1600

RiverCenter II, 100 East RiverCenter Blvd., Covington, Kentucky 41011. It is the nation's

largest provider of pharmacy services to LTCFs. Omnicare serves more than 729,500 residents

in 9,800 LTCFs such as nursing homes, skilled nursing facilities, assisted living communities,

and other institutional healthcare settings in 45 states. Omnicare owns the following

subsidiaries: AAHS Acquisition Corp., Accu-Med Services, Inc.. ACP Acquisition Corp., AMC

- New York, Inc., AMC - Tennessee, Inc., Anderson Medical Services, Inc., Bach's Pharmacy

(East) Inc., Bach's Pharmacy Services, LLC, Badger Acquisition LLC, Badger Acquisition of

3

Brooksville LLC, Badger Acquisition of Kentucky LLC, Badger Acquisition of Minnesota LLC,

Badger Acquisition of Ohio LLC, Badger Acquisition of Orlando LLC, Badger Acquisition of

Tampa LLC, Badger Acquisition of Texas LLC, Bio-Pharm International, Inc., BPNY

Acquisition Corp., BPTX Acquisition Corp., Campo's Medical Pharmacy, Inc., Care

Pharmaceutical Services, Inc., Catapharm Corp., CHP Acquisition Corp., CIP Acquisition Corp.,

CompScript - Boca, Inc., CompScript - Mobile, Inc., CompScript, Inc., CP Acquisition Corp.,

Creekside Managed Care Pharmacy, Inc., CTLP Acquisition Corp., D & R Pharmaceutical

Services, Inc., Dixon Pharmacy, Inc. Electra Acquisition Corp., Enloe Drugs, Inc., Euro Bio-

Pharm Clinical Services, Inc., Evergreen Pharmaceutical of California, Inc., Evergreen

Pharmaceutical, Inc, Hardardt Group, Inc., Heartland Repack Services LLC, HMIS, Inc., Home

Care Pharmacy, Inc., Home Pharmacy Services, Inc., Howard's Pharmacy, Inc., Hytree

Pharmacy, Inc., Interlock Pharmacy Systems, Inc., JHC Acquisition, Inc., Konsult, Inc.,

Langsam Health Services, Inc., Langsam Medical Products, Inc., Lawrence Medical Supply,

Inc., LCPS Acquisition, LLC, Lo-Med Prescription Services, Inc., LPI Acquisition Corp.,

Managed Healthcare, Inc., Med World Acquisition Corp., Medical Arts Health Care, Inc.,

Medical Services Consortium, Inc., MOSI Acquisition Corp., Nihan & Martin, Inc., NIV

Acquisition Corp., North Shore Pharmacy Services, Inc., OCR Services Corporation, OCR-RA

Acquisition Corp., OFL Corp., Omnibill Services LLC, Omnicare Air Transport Services, Inc.,

Omnicare Clinical Research, Inc., Omnicare Clinical Research, LLC, Omnicare CR, Inc.,

Omnicare Holding Company, Omnicare Management Company, Omnicare Pennsylvania Med

Supply, LLC, Omnicare Pharmaceutics, Inc., Omnicare Pharmacies of Pennsylvania East, LLC,

Omnicare Pharmacies of Pennsylvania West, Inc., Omnicare Pharmacies of the Great Plains

Holding Company, Omnicare Pharmacy and Supply Services, Inc., Omnicare Pharmacy of

4

Colorado, LLC, Omnicare Pharmacy of Maine Holding Company, Omnicare Pharmacy of Maine

LLC, Omnicare Pharmacy of Massachusetts LLC, Omnicare Pharmacy of Nebraska LLC,

Omnicare Pharmacy of the Midwest, Inc., Omnicare Pharmacy of South Dakota LLC, Omnicare

Pharmacy of Tennessee LLC, Omnicare.com, Inc., PBM-Plus, Inc., PCI Acquisition, LLC,

Pharmacon Corp., Pharmacy Associates of Glens Falls, Inc., Pharmacy Consultants, Inc., Pharm-

Corp of Maine LLC, Pharmed Holdings, Inc., PRN Pharmaceutical Services, Inc., Resource

Biometrics, Inc., Roeschen's Healthcare Corp., Royal Care of Michigan LLC, SHC Acquisition

Co., LLC, Shore Pharmaceutical Providers, Inc., Southside Apothecary, Inc., Specialized Home

Infusion of Michigan, LLC, Specialized Patient Care Services, Inc., Specialized Pharmacy

Services, Inc., Sterling Healthcare Services, Inc., Superior Care Pharmacy, Inc., Swish, Inc.,

TCPI Acquisition Corp., THG Acquisition Corp., Three Forks Apothecary, Inc., UC Acquisition

Corp., Value Health Care Services, Inc., Value Pharmacy, Inc., Vital Care Infusions Supply, Inc.,

Weber Medical Systems, Inc., Westhaven Services Co., Williamson Drug Company,

Incorporated, Winslow's Pharmacy. Upon information and belief, Omnicare also has ownership

interests in other subsidiaries not listed above. Omnicare and its subsidiaries, known and

unknown, shall be referred to as "Omnicare."

## FEDERAL AND STATE LAWS

5.      The Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. secs.

1396-1396v (hereafter "Medicaid"), is a Health Insurance Program administered by the

Government of the United States and the various individual States and is funded by State and

Federal taxpayer revenue. The Medicaid Program is overseen by the United States Department of

Health and Human Services. Medicaid was designed to assist participating states in providing

5

medical services, durable medical equipment and prescription drugs to financially needy individuals that qualify for Medicaid.

6.      The Federal FCA, 31 U.S.C. § 3729(a)(1) makes "knowingly" presenting or causing to be presented to the United States any false or fraudulent claim for payment, a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and a civil monetary penalty of between $5,000 and $10,000 per claim ($5,500 and $11,000 for claims made on or after September 29, 1999).

7.      The Federal FCA, 31 U.S.C. § 3729(a)(2) makes "knowingly" making, using, or causing to be used or made, a false record or statement to get a false or fraudulent claim paid or approved by the Government, a violation of federal law for which the United States may recover three times the amount of the damages the Government sustains and a civil monetary penalty of between $5,000 and $10,000 per claim ($5,500 and $11,000 for claims made on or after September 29, 1999).

8.      The Federal FCA, 31 U.S.C. sec. 3729(a)(3) makes any person, who conspires to defraud the United States by getting a false or fraudulent claim allowed or paid, liable for three times the amount of the damages the Government sustains and a civil monetary penalty of between $5,000 and $10,000 per claim ($5,500 and $11,000 for claims made on or after September 29, 1999).

9.      The Federal FCA, 31 U.S.C. § 3729(a)(7) makes it illegal for any person to "knowingly" make, use or cause to be made or used a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the Government, a violation of federal law for which the United States may recover three times the amount of the damages the

6

Government sustains and a civil monetary penalty of between $5,000 and $10,000 per claim ($5,500 and $11,000 for claims made on or after September 29, 1999).

10.     The Federal FCA defines a "claim" to include any request or demand, whether under contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested.

11.     The Medicaid and Anti-Kickback Act ("AKA") 42 U.S.C. §1320a-7b (b), makes it illegal to offer, receive, or solicit any remuneration, kickback, bribe, or rebate, whether directly or indirectly, overtly or covertly, in cash or in kind, to or from any person in order to induce such person to purchase, lease, or order, or to arrange for or recommend the purchasing, leasing, or ordering of any good, service, or item for which payment may be made in whole or in part under the Medicaid Program and other federal health care programs. The AKA seeks to prohibit such activities in order to secure proper medical treatment and referrals, and to limit the possibility of a patient having to undergo unnecessary treatments or having to accept specific items or services which are based not on the needs of the patient, but on the incentives given to others, thereby limiting the patient's right to choose proper medical care and services.

12.     As set forth below, several states have passed False Claims Act legislation, which in most instances closely tracks the Federal FCA: California False Claims Act, Cal. Gov't Code § 12650 *et seq.*, Delaware False Claims and Reporting Act, Del. Code Ann. Tit. 6, § 1201 *et seq.*, District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.13 *et seq.*, Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*, Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*, Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/1 *et*

7

*seq.*, Louisiana Medical Assistance Programs Integrity Law, 46 La. Rev. Stat. c. 3, sec. 437.1 *et seq.*, Massachusetts False Claims Act, Mass. Gen. Laws Ch. 12, § 5A *et seq.*, Nevada False Claims Act, Nev. Rev. Stat. § 357.010 *et seq.*, New Mexico Medicaid False Claims Act,   2004 New Mexico Laws Ch. 49 (H.B. 468),   Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*, Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code § 36.001 *et seq.*, and Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.* (together the "State Plaintiffs"). These State False Claims Acts apply to the state portion of Medicaid fraud losses caused by false Medicaid claims to the jointly federal-state funded Medicaid program. Each of the statutes listed above contains *qui tam* provisions governing, *inter alia*, a relator's right to claim a share of the State's recovery.

## FACTS AND ALLEGATIONS

### Factual Allegations

13.    42 C.F.R. 483.60(a) requires LTCFs to "provide pharmaceutical services (including procedures that assure the accurate acquiring, receiving, dispensing, and administering of all drugs and biologicals) to meet the needs of each resident." 42 C.F.R. 483.60(b) and (c) provide that LTCFs

> must employ or obtain the services of a licensed pharmacist who-- (1) Provides consultation on all aspects of the provision of pharmacy services in the facility; (2) Establishes a system of records of receipt and disposition of all controlled drugs in sufficient detail to enable an accurate reconciliation; and (3) Determines that drug records are in order and that an account of all controlled drugs is maintained and periodically reconciled.

(c) Drug regimen review.

> (1) The drug regimen of each resident must be reviewed at least once a month by a licensed pharmacist. (2) The pharmacist must report any irregularities to the attending physician and the director of nursing, and these reports must be acted upon.

8

14. Omnicare's core business is to provide pharmaceutical services to LTCFs. Omnicare offers to take over all drug procurement, services, and billing for LTCFs. Omnicare offers the regulatorily-required pharmaceutical consultant services to LTCFs if those LTCFs allow Omnicare pharmacies to provide all drugs and certain other products to the patients of the LTCFs. Omnicare buys drugs from manufacturers, distributes the drugs to the LTCFs, and bills Medicaid and other payers for the drugs.

15. The Medicaid Program provides federal funds to the states to assist the poor, elderly, and disabled to receive medical care, prescription and non-prescription drugs, and related services. States may elect to opt in or out of the Medicaid Program. States that opt into the program must submit a State Plan ("Medicaid State Plan") to the United States Department of Health and Human Services ("DHHS") for approval, describing the policies and methods used to set reimbursement rates for each type of service included in the program. The provision of drugs, pharmaceuticals, and related services are one such type of service. Both the Medicaid State Plan and any amendments must meet federal requirements. 42 U.S.C. 1396a(a) and (b); 42 C.F.R. 430.10, 430.12.

16. Medicaid prescription drug reimbursement to pharmacies like Omnicare consists of two components: a formula to cover the cost of the prescription drug product and a dispensing fee. The drug product component cost is the cost of the drug as determined by a Medicaid formula which estimates the acquisition cost. Federal law requires that the dispensing fee paid to pharmacies be reasonable. 42 C.F.R. 447.331(b)(1).

17. Medicaid State Plans set reimbursement amounts for drug products, and also set dispensing fees.

18. Medicaid covers a large percentage of patients in LTCFs. Omnicare's Securities

9

and Exchange Commission ("SEC") filings indicate that 44% of its reimbursements for

pharmaceutical services come from Medicaid, with 3% coming from Medicare. Omnicare's

Pharmacy Services segment recorded sales of over two billion dollars for the year ended

December 31, 2001, indicating that Omnicare submits millions of claims to Medicaid each year,

and receives hundreds of millions of dollars in reimbursements from the federal government

each year.

      19.     Omnicare's SEC filings state that Omnicare's consolidated gross profit as a

percentage of sales in the year ending December 31, 2001, was 26.8%. The only way Omnicare

can make such profits on its core pharmaceutical services business is to ensure that Omnicare

acquisition costs and distribution expenses stay significantly below the reimbursement levels

Omnicare receives for drugs. The difference between Omnicare's acquisition costs versus

reimbursement levels for particular drugs will be referred to hereafter as "the Spread."

      20.     Omnicare's offer to provide regulatorily-required pharmacy consultant services to

LTCFs is a crucial part of Omnicare's business plan. The cost of paying a pharmacist to review

medications of each patient every month, and to supervise drug distribution, is ordinarily a

significant expense to LTCFs. Omnicare offers pharmaceutical services to LTCFs at below

market rates as an inducement for LTCFs to sign pharmacy services contracts with Omnicare.

Omnicare's offer of pharmacy consultant services at below market rates, coupled with its offer to

take over drug procurement, distribution, and billing, has allowed Omnicare to obtain pharmacy

services contracts with thousands of LTCFs, to the point that Omnicare now serves more than

729,500 residents in 9,800 LTCFs. Omnicare has also built its patient base by acquiring other

pharmacy services companies that market to nursing homes.

      21.     Omnicare's offer of pharmacy consultant services at below market rates as an

inducement for LTCFs to sign pharmacy services contracts is a violation of the Anti-Kickback Act, 42 U.S.C. § 1320A-7b(b)(2). The Anti-Kickback Act forbids health care providers from offering goods or services at below-market rates as an inducement for referrals, recommendations, or arranging health care services reimbursable under Federal health care programs. The statute specifically provides:

(2)    Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person –

    (A)    to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

    (B)    in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a crime.

22.    Once Omnicare's pharmacy consultants are in place at LTCFs, those consultants are in an advantageous position to recommend medications for patients of the LTCF. Regulations require the pharmacy consultants to review all medications prescribed for LTCF patients on a monthly basis, giving the consultants access to complete medication information for each patient. Physicians understand that such pharmacy consultants are expected to make recommendations to change prescriptions for patients if better or less expensive medications are available. Physicians are frequently inclined to follow recommendations from such consultants if they sound reasonable on their face. Physicians frequently are not aware of the reimbursement levels for drugs, and are inclined to accept recommendations from consultants when consultants say that the recommendations are based on cost considerations.

11

23.    Omnicare has adopted and published a book of "Omnicare Guidelines," which rank specific drugs in therapeutic classes as preferred, acceptable or unacceptable. The Omnicare Guidelines provide cost information using a system of one to four stars for each drug. Upon information and belief, such general classifications on cost allow Omnicare to conceal reimbursement differentials between drugs that have the same number of "stars" in the cost rankings.

24.    In addition to the "Omnicare Guidelines" for recommending drugs, Omnicare also engages in periodic "fax campaigns," where Omnicare headquarters sends faxes for distribution to all its pharmacy consultants recommending a certain drug for particular disease conditions. For example, in November, 2001, Omnicare identified all patients it serviced who were on "conventional" antipsychotic medications, such as haloperidol, mesoridazine, thioridizine, and fluphenazine. Omnicare then faxed or called the physicians for each of those patients, recommending that the patients be switched to Risperdal, an "atypical" antipsychotic medication. Omnicare then required all its pharmacy consultants to follow up with doctors to recommend Risperdal. Omnicare said in a fax to its pharmacy consultants that "[i]t is imperative that each and every resident on a conventional antipsychotic be re-evaluated for appropriate conversion to an atypical antipsychotic, with Risperdal being the more cost effective GPCG 'preferred' alternative."

25.    Omnicare hires pharmacists as independent contractors to provide pharmacy consultant services to LTCFs. On information and belief, Omnicare pays those pharmacy consultants more than it charges LTCFs for their services. On information and belief, Omnicare evaluates and compensates its pharmacy consultants based on the consultants' ability to successfully recommend drugs in conformity with Omnicare Guidelines and fax campaigns.

12

26.     With a large patient population base serviced by its pharmacy consultants,

Omnicare is in a position to negotiate favorable prices from drug manufacturers.  On information

and belief, Omnicare can offer more than large volume purchases as an inducement to drug

manufacturers to cut their prices–Omnicare can promise that if a drug manufacturer will cut the

price for a particular drug below a certain level, Omnicare will make that drug its "preferred"

cost effective alternative for certain disease conditions.  On information and belief, Omnicare

promises that its pharmacy consultants will recommend that physicians switch prescriptions to

the preferred cost alternative drug, allowing Omnicare to promise that its consultants will drive

up sales volume in exchange for lower prices.  While volume discounts generally fall within the

"safe harbors" to the Anti-Kickback Act, Omnicare's promises to recommend particular drugs

through its pharmacy consultants go beyond ordinary volume purchasing decisions, and also

constitute violations of the Anti-Kickback Act, because Omnicare is soliciting discounts as a

condition for recommending particular drugs to physicians.  42 U.S.C. § 1320A-7b(b)(1)

provides:

> (1)     Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind
>
>> (A)     in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>>
>> (B)     in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a crime.

In sum, Omnicare's financial incentive to maximize the spread between acquisition costs

and reimbursement levels creates an inherent conflict of interest.  Omnicare's consultants serve

both as pharmacists and as a highly effective sales force.

27.    As an additional inducement for LTCFs to sign pharmacy contracts with Omnicare, Omnicare offered staff services at no cost to provide hemodialysis on-site at LTCF facilities. Omnicare only offered no cost hemodialysis staff to LTCFs that entered into pharmacy contracts with Omnicare.

28.    Upon information and belief, Omnicare also followed a practice of falsely and fraudulently billing for more expensive, name brand drugs when it had actually provided generic versions of those drugs.

29.    By requiring its subsidiaries listed in paragraph 4 above, and other subsidiaries unknown to Plaintiff, to follow Omnicare corporate policies and guidelines for recommending particular drugs and billing for name brand drugs when cheaper generic versions had actually been provided, Omnicare has caused its subsidiaries to submit millions of false and fraudulent claims for reimbursement to Medicaid and Medicare.

30.    As required by law, Relator has served a detailed Disclosure Statement and a Supplemental Disclosure Statement upon the United States and the State parties to this action. The Disclosure Statement provides additional details concerning the Defendant's conduct and Relator's basis of knowledge.

### COUNT ONE (Federal FCA)
### (Pharmacy Consultant Services at Below
### Market Rates in Violation of the Anti-Kickback Act)

31.    Relator realleges and incorporates by reference paragraphs 1 through 30 as though fully set forth herein.

32.    Defendant has knowingly submitted false or fraudulent claims for payment, or caused false or fraudulent claims for payment to be submitted, to officials of the United States

14

government, in violation of 31 U.S.C. 3729(a)(1) and (c). Defendant knowingly violated the
Anti-Kickback Act by offering pharmacy consultant services at below market rates to induce
LTCFs to enter contracts for pharmacy services with Omnicare. Once in place through a
violation of the Anti-Kickback Act, Omnicare's consultants recommended that physicians switch
prescriptions for patients of the LTCFs based at least in part on Omnicare's financial interest in
maximizing the spread between acquisition costs and reimbursement levels, which constituted an
inherent conflict of interest of the kind that the Anti-kickback Act was designed to prevent.
Defendant knew that these practices and procedures resulted in fraudulent claims to the federal
government through the Medicare and Medicaid programs.

33.     Because of the Defendant's conduct set forth above, the United States has suffered
actual damages by paying, in many instances, higher reimbursement levels for drugs
recommended by Omnicare pharmacy consultants than it would have paid for the drugs
previously prescribed for the same patients.

### COUNT TWO (Federal FCA)
### (Drug Price Discounts as Inducement for Recommending Drugs as the Preferred Lower Cost Alternative in Violation of the Anti-Kickback Act)

34.     Relator realleges and incorporates by reference paragraphs 1 through 33 as though
fully set forth herein.

35.     Defendant has knowingly submitted false or fraudulent claims for payment, or
caused false or fraudulent claims for payment to be submitted, to officials of the United States
government, in violation of 31 U.S.C. 3729(a)(1) and (c). Upon information and belief,
Defendant knowingly violated the Anti-Kickback Act by soliciting price discounts from drug
manufacturers in exchange for promises that Omnicare's consulting pharmacists would
recommend particular drugs as Omnicare's preferred lower cost alternatives for certain disease

15

conditions. Omnicare's consultants recommended that physicians switch prescriptions for patients of the LTCFs based at least in part on Omnicare's financial interest in maximizing the spread between acquisition costs and reimbursement levels, which constituted an inherent conflict of interest of the kind that the Anti-kickback Act was designed to prevent. Defendant knew that these practices and procedures resulted in fraudulent claims to the federal government through the Medicare and Medicaid programs.

36.     Because of the Defendant's conduct set forth above, the United States has suffered actual damages by paying, in many instances, higher reimbursement levels for drugs recommended by Omnicare pharmacy consultants than it would have paid for the drugs previously prescribed for the same patients.

**COUNT THREE (Federal FCA)**
**(Falsely Submitting Claims for Name Brand Drugs When**
**Omnicare Actually Provided Cheaper Generic Versions of the Same Drugs)**

37.     Relator realleges and incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

38.     Defendant has knowingly submitted false or fraudulent claims for payment, or caused false or fraudulent claims for payment to be submitted, to officials of the United States government, in violation of 31 U.S.C. 3729(a)(1) and (c). Defendant submitted, or caused to be submitted, claims to Medicaid and Medicare stating that it had provided more expensive brand name drugs to patients, when in fact, as Omnicare well knew, it had actually provided cheaper generic versions of the same drugs. Defendant Omnicare knew that these practices and procedures resulted in false and fraudulent claims to the federal government through the Medicare and Medicaid programs, because Omnicare was claiming, or causing to be claimed, higher reimbursement levels for those drugs than it or its subsidiaries were really entitled to.

16

39.     Through the conduct described in paragraph 38 above, Defendant knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the officials of the United States government, in violation of 31 U.S.C. §3729(a)(2).

40.     Because of the Defendant's conduct set forth above, the United States has suffered actual damages by paying higher reimbursement levels for generic drugs than it should have paid.

## COUNT FOUR
## VIOLATIONS OF THE CALIFORNIA FCA
### Cal. Gov't Code § 12651(a)(1)

41.     Relator restates and realleges the allegations contained in Paragraphs 1-40 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

42.     The California False Claims Act, Cal. Gov't Code § 12651(a)(1), specifically provides, in part:

(a) Any person who commits any of the following acts shall be liable to the state . . . for three times the amount of damages which the state . . . sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the state .
. . for the costs of a civil action brought to recover any of those penalties or damages, and may be liable to the state . . . for a civil penalty of up to ten thousand ($10,000) for each false claim:

(1) Knowingly presents or causes to be presented to an officer or employee of the state . .
     a false claim for payment or approval.

43.     Defendant knowingly presented or caused to be presented to the California Medicaid program false and fraudulent claims for payment and approval, claims which failed to

disclose the material violations of the AKA and other laws, in violation of Cal. Gov't Code § 12651(a)(1).

44.　　The State of California paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in California, because of these acts by the Defendant.

## COUNT FIVE
## VIOLATIONS OF THE CALIFORNIA FCA
### Cal. Gov't Code § 12651(a)(2)

45.　　Relator restates and realleges the allegations contained in Paragraphs 1-44 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

46.　　The California False Claims Act, Cal. Gov't Code § 12651(a)(2), specifically provides:

(a) Any person who commits any of the following acts shall be liable to the state . . . for three times the amount of damages which the state . . . sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the state... for the costs of a civil action brought to recover any of those penalties or damages, and may be liable to the state . . . for a civil penalty of up to ten thousand ($10,000) for each false claim:

(2) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state . . . .

47.　　Defendant knowingly made, used and/or caused to be made or used false records and statements to get false and fraudulent claims paid and approved by the California Medicaid program, in violation of Cal. Gov't Code § 12651(a)(2).

48.　　The State of California paid said claims and has sustained damages, to the extent

- 18 -

of its portion of Medicaid losses from Medicaid claims filed in California, because of these acts by the Defendant.

## COUNT SIX
### VIOLATIONS OF THE CALIFORNIA FCA
#### Cal. Gov't Code § 12651(a)(3)

49.     Relator restates and realleges the allegations contained in Paragraphs 1-48 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

50.     The California False Claims Act, Cal. Gov't Code § 12651(a)(3), specifically provides:

(a)  Any person who commits any of the following acts shall be liable to the state . . . for three times the amount of damages which the state . . . sustains because of the act of that person.  A person who commits any of the following acts shall also be liable to the state . . . for the costs of a civil action brought to recover any of those penalties or damages, and may be liable to the state . . . for a civil penalty of up to ten thousand ($10,000) for each false claim:

(3)  Conspires to defraud the state . . . by getting a false claim allowed or paid by the state . .

51.     Defendant conspired to defraud the State of California by getting false and fraudulent claims allowed and paid, in violation of Cal. Gov't Code § 12651(a)(3).

52.     The State of California paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in California, because of these acts by the Defendant.

## COUNT SEVEN
## VIOLATIONS OF THE CALIFORNIA FCA
### Cal. Gov't Code § 12651(a)(7)

53.     Relator restates and realleges the allegations contained in Paragraphs 1-52 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

54.     The California False Claims Act, Cal. Gov't Code § 12651(a)(7), specifically provides:

(a) Any person who commits any of the following acts shall be liable to the state . . . for three times the amount of damages which the state . . . sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the state . . . for the costs of a civil action brought to recover any of those penalties or damages, and may be liable to the state . . . for a civil penalty of up to ten thousand ($10,000) for each false claim:

(7) Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state . . . .

55.     Defendant knowingly made, used or caused to be made or used a false record or statement to conceal their actions and to avoid or decrease an obligation to pay or transmit money to the state, including without limitation, by failing to alert the state government or to pay the correct rebate amounts to Medicaid, in violation of Cal. Gov't Code § 12651(a)(7).

56.     The State of California paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in California, because of these acts by the Defendant.

## COUNT EIGHT
## VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT
### Del. Code Ann. tit. 6, § 1201(a)(1)

57.     Relator restates and realleges the allegations contained in Paragraphs 1-56 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

58.     The Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201(a)(1), specifically provides, in part, that any person who:

(a)(1) Knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval; shall be liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of this section, plus 3 times the amount of actual damages which the Government sustains because of the act of that person.

59.     Defendant knowingly presented or caused to be presented, directly and indirectly, to the Delaware Medicaid program false and fraudulent claims for payment and approval, claims which failed to disclose the material violations of the AKA and other laws, in violation of Del. Code Ann. tit. 6, § 1201(a)(1).

60.     The State of Delaware paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Delaware, because of these acts by the Defendant.

## COUNT NINE
## VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT
### Del. Code Ann. tit. 6, § 1201(a)(2)

61.     Relator restates and realleges the allegations contained in Paragraphs 1-60 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

- 21 -

62.     The Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6,

§ 1201(a)(2), specifically provides, in part, that any person who:

(a)(2) Knowingly makes, uses or causes to be made or used, directly or indirectly, a false

record or statement to get a false or fraudulent claim paid or approved;

shall be liable to the Government for a civil penalty of not less than $5,500 and not more

than $11,000 for each act constituting a violation of this section, plus 3 times the amount

of actual damages which the Government sustains because of the act of that person.

63.     Defendant knowingly made, used and caused to be made and used, directly and indirectly, false records and statements to get false and fraudulent claims paid and approved by the State of Delaware, in violation of Del. Code Ann. tit. 6, § 1201(a)(2).

64.     The State of Delaware paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Delaware, because of these acts by the Defendant.

## COUNT TEN
## VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT
### Del. Code Ann. tit. 6, § 1201(a)(3)

65.     Relator restates and realleges the allegations contained in Paragraphs 1-64 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

66.     The Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201(a)(3), specifically provides, in part, that any person who:

(a)(3) Conspires to defraud the Government by getting a false or fraudulent claim

allowed or paid; shall be liable to the Government for a civil penalty of not less than

$5,500 and not more than $11,000 for each act constituting a violation of this section,

- 22 -

plus 3 times the amount of actual damages which the Government sustains because of the act of that person.

67.     Defendant conspired to defraud the State of Delaware by getting false and fraudulent claims allowed and paid, in violation of Del. Code Ann. tit. 6, § 1201(a)(3).

68.     The State of Delaware paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Delaware, because of these acts by the Defendant.

## COUNT ELEVEN
## VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT
### Del. Code Ann. tit. 6, § 1201(a)(7)

69.     Relator restates and realleges the allegations contained in Paragraphs 1-68 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

70.     The Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201(a)(7), specifically provides, in part, that any person who:

(a)(7) Knowingly makes, uses or causes to be made or used a false record or statement to conceal, avoid, increase, or decrease an obligation to pay or transmit money to or from the government; shall be liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of this section, plus 3 times the amount of actual damages which the Government sustains because of the act of that person.

71.     Defendant knowingly made, used or caused to be made or used a false record or statement to conceal their actions and to avoid or decrease an obligation to pay or transmit money to the state, including without limitation, by failing to alert the state government or to pay the correct rebate amounts to Medicaid, in violation of Del. Code Ann. tit. 6, § 1201(a)(7).

72.     The State of Delaware paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Delaware, because of these acts by the Defendant.

## COUNT TWELVE
## VIOLATIONS OF THE DISTRICT OF COLUMBIA
## PROCUREMENT REFORM AMENDMENT ACT
### D.C. Code § 2-308.14(a)(1)

73.     Relator restates and realleges the allegations contained in Paragraphs 1-72 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

74.     The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(1), specifically provides, in part:

(a) Any person who commits any of the following acts shall be liable to the District for 3 times the amount of damages which the District sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the District for the costs of a civil action brought to recover penalties or damages, and may be liable to the District for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim for which the person:

(1) Knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval.

75.     Defendant knowingly caused to be presented to the District of Columbia Medicaid program false and fraudulent claims for payment and approval, claims which failed to disclose the material violations of the AKA and other laws, in violation of D.C. Code § 2-308.14(a)(1).

76.     The District of Columbia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in the District of Columbia,

because of these acts by the Defendant.

## COUNT THIRTEEN
## VIOLATIONS OF THE DISTRICT OF THE COLUMBIA
## PROCUREMENT REFORM AMENDMENT ACT
### D.C. Code § 2-308.14(a)(2)

77.    Relator restates and realleges the allegations contained in Paragraphs 1-76 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

78.    The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(2), specifically provides, in part:

(a) Any person who commits any of the following acts shall be liable to the District for 3 times the amount of damages which the District sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the District for the costs of a civil action brought to recover penalties or damages, and may be liable to the District for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim for which the person:

(2) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the District;

79.    Defendant knowingly made, used and caused to be made and used, directly and indirectly, false records and statements to get false and fraudulent claims paid and approved by the District of Columbia, in violation of D.C. Code § 2-308.14(a)(2).

80.    The District of Columbia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in the District of Columbia, because of these acts by the Defendant.

- 25 -

## COUNT FOURTEEN
## VIOLATIONS OF THE DISTRICT OF THE COLUMBIA
## PROCUREMENT REFORM AMENDMENT ACT
### D.C. Code § 2-308.14(a)(3)

81.   Relator restates and realleges the allegations contained in Paragraphs 1-80 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

82.   The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(3), specifically provides:

(a) Any person who commits any of the following acts shall be liable to the District for 3 times the amount of damages which the District sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the District for the costs of a civil action brought to recover penalties or damages, and may be liable to the District for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim for which the person:

(3) Conspires to defraud the District by getting a false claim allowed or paid by the District;

83.   Defendant conspired to defraud the District of Columbia by getting false and fraudulent claims allowed and paid, in violation of D.C. Code § 2-308.14(a)(3).

84.   The District of Columbia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in the District of Columbia, because of these acts by the Defendant.

## COUNT FIFTEEN
## VIOLATIONS OF THE DISTRICT OF COLUMBIA
## PROCUREMENT REFORM AMENDMENT ACT
### D.C. Code § 2-308.14(a)(7)

85.   Relator restates and realleges the allegations contained in Paragraphs 1-84 above

as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

86.     The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(1), specifically provides, in part:

(a) Any person who commits any of the following acts shall be liable to the District for 3 times the amount of damages which the District sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the District for the costs of a civil action brought to recover penalties or damages, and may be liable to the District for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim for which the person:

(7) Knowingly makes, uses or causes to be made or used a false record or statement to conceal, avoid, increase, or decrease an obligation to pay or transmit money to or from the government;

87.     Defendant knowingly made, used or caused to be made or used a false record or statement to conceal their actions and to avoid or decrease an obligation to pay or transmit money to the state, including without limitation, by failing to alert the state government or to pay the correct rebate amounts to Medicaid, in violation of D.C. Code § 2-308.14(a)(7).

88.     The District of Columbia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in the District of Columbia, because of these acts by the Defendant.

## COUNT SIXTEEN
## VIOLATIONS OF THE FLORIDA FCA
### Fla. Stat. § 68.082(2)(a)

89.     Relator restates and realleges the allegations contained in Paragraphs 1-88 above as if each were stated herein in their entirety and said allegations are incorporated by reference.

90. The Florida False Claims Act, Fla. Stat. § 68.082(2)(a), specifically provides, in part, that any person who:

(a) Knowingly presents or causes to be presented to an officer or employee of an agency a false claim for payment or approval; …is liable to the state for a civil penalty of not less than $5,000 and not more than $10,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

91. Defendant knowingly presented or caused to be presented to the Florida Medicaid program false claims for payment and approval, claims which failed to disclose the material violations of the AKA and other laws, in violation of Fla. Stat. § 68.082(2)(a).

92. The State of Florida paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Florida, because of these acts by the Defendant.

## COUNT SEVENTEEN
## VIOLATIONS OF THE FLORIDA FCA
## Fla. Stat. § 60.082(2)(b)

93. Relator restates and realleges the allegations contained in Paragraphs 1-92 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

94. The Florida False Claims Act, Fla. Stat. § 68.082(2)(b), specifically provides, in part, that any person who:

(b) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency; …

is liable to the state for a civil penalty of not less than $5,000 and not more than $10,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

- 28 -

95.     Defendant knowingly made, used and caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by an agency of the State of Florida, in violation of Fla. Stat. § 68.082(2)(b).

96.     The State of Florida paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Florida, because of these acts by the Defendant.

## COUNT EIGHTEEN
## VIOLATIONS OF THE FLORIDA FCA
### Fla. Stat. § 68.082(2)(c)

97.     Relator restates and realleges the allegations contained in Paragraphs 1-96 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

98.     The Florida False Claims Act, Fla. Stat. § 68.082(2)(c), specifically provides, in part, that any person who:

(c) Conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid;. . .is liable to the state for a civil penalty of not less than $5,000 and not more than $10,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

99.     Defendant conspired to submit a false claim to Government Health Care Programs and to deceive Federal/Government Health Care Programs for the purpose of getting false and fraudulent claims allowed and paid, in violation of Fla. Stat. § 680.82(2)(c).

100.    The State of Florida paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Florida, because of these acts by the Defendant.

- 29 -

## COUNT NINETEEN
## VIOLATIONS OF THE FLORIDA FCA
### Fla. Stat. § 68.082(2)(g)

101.    Relator restates and realleges the allegations contained in Paragraphs 1-100 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

102.    The Florida False Claims Act, Fla. Stat. § 68.082(2)(g), specifically provides, in part, that any person who:

(g) Knowingly makes, uses or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to an agency. . .is liable to the state for a civil penalty of not less than $5,000 and not more than $10,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

103.    Defendant knowingly made, used or caused to be made or used a false record or statement to conceal their actions and to avoid or decrease an obligation to pay or transmit money to the state, including without limitation, by failing to alert the state government or to pay the correct rebate amounts to Medicaid, in violation of Fla. Stat. § 680.82(2)(g).

104.    The State of Florida paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Florida, because of these acts by the Defendant.

## COUNT TWENTY
## VIOLATIONS OF THE HAWAII FCA
### Haw. Rev. Stat. § 661-21(a)(1)

105.    Relator restates and realleges the allegations contained in Paragraphs 1-104 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.